UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ADEN Y. JELEY,

          Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. 2:17-CV-396
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Jolson

**REPORT AND RECOMMENDATION**

Plaintiff, Aden Y. Jeley, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income. For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case under Sentence Four of § 405(g).

I.     BACKGROUND

Plaintiff filed an application for supplemental security income on June 30, 2013, alleging disability since January 1, 2010. (Tr. 15, PAGEID #: 53). After initial administrative denials of Plaintiff's claims, Administrative Law Judge Jason C. Earnhart ("the ALJ") heard the case on July 16, 2015. (*Id.*; Tr. 36–63, PAGEID #: 74–101). On August 12, 2015, the ALJ issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 15–29, PAGEID #: 53–67). Plaintiff requested review of the decision by the Appeals Council, which denied the request on March 8, 2007. (Tr. 1–4, PAGEID #: 39–42). Thus, the ALJ's decision became the Commissioner's final decision. (*Id.*).

Plaintiff filed this case on May 9, 2017, and the Commissioner filed the administrative record on July 17, 2017. (Doc. 9). Plaintiff filed a Statement of Specific Errors on September 10, 2017 (Doc. 12), the Commissioner responded on October 18, 2017 (Doc. 13), and Plaintiff replied on November 2, 2017 (Doc. 14).

**A. Personal Background and Relevant Hearing Testimony**

Plaintiff was born in Somalia on May 2, 1971 (Tr. 127, PAGEID #: 165), and came to the United States as a refugee in 2013 (Tr. 47, PAGEID #: 85). Plaintiff has no education (Tr. 46, PAGEID #: 84) and speaks little English (Tr. 40, PAGEID #: 77). He was a nomad with work raising camels in Somalia and as a shopkeeper in South Africa. (Tr. 185, PAGEID #: 223; Tr. 245, PAGEID #: 283; Tr. 234, PAGEID #: 272). Plaintiff has not worked since his arrival in this country (Tr. 47, PAGEID #: 85), does not drive (Tr. 77, PAGEID #: 115), lives with a roommate, and has a home health aide who comes for two hours each day to "help[ ] him with the restroom," clean, do laundry, and cook. (Tr. 51, PAGEID #: 89).

Plaintiff was shot in the abdomen during a robbery while in South Africa in 2010, after which he had surgery. (Tr. 69, PAGEID #: 108). Plaintiff alleges that the gunshot wound caused a number of medical issues, including a lumbar spine impairment with lower back pain, abdominal pain, and right kidney disease that results in recurrent urinary tract infections and increased urinary frequency and urgency. (Tr. 40–42, PAGEID #: 77–79). Testifying through an interpreter at the hearing, Plaintiff stated that increased urinary frequency causes him to go to the restroom ten times per day and ten times per night, which interferes with his sleep. (Tr. 48–49, PAGEID #: 86–87).

Plaintiff also suffers from an abdominal hernia, chronic hypertension, breathing difficulties, post-traumatic stress disorder, a depressive disorder, a cognitive disorder, and

schizophrenia. (Tr. 41, PAGEID #: 79; Tr. 43, PAGEID #: 81). He likewise testified that he suffers from memory problems. (Tr. 50–51, PAGEID #: 88–89). His alleged onset date is January 1, 2010. (Tr. 127, PAGEID #: 165).

At the hearing, the ALJ asked the Vocational Expert (the "VE") to consider a hypothetical individual with Plaintiff's residual functional capacity ("RFC") of the same age, education, and experience, with no past work. (Tr. 53, PAGEID #: 91). The VE sought clarification from the ALJ to the extent that the RFC required that the hypothetical individual "be accessible to a restroom throughout the entire workday." (Tr. 54, PAGEID #: 92). The relevant exchange is as follows:

> VE: Well, I—I guess I have a question on that last limitation, Your Honor.
>
> ALJ: Sure.
>
> VE: Accessible to a restroom throughout the entire day.
>
> ALJ: That means no outside. No going for trips outside.
>
> VE: Yes, right.
>
> ALJ: And, you know, being in an environment where—
>
> VE: Sure.
>
> ALJ: —they are able to use the restroom. Not—we're going to talk about off-task and how much—
>
> VE: Yes. Right. Yes.
>
> ALJ: —in a little bit.
>
> VE: Just accessibility. Got you. Okay.
>
> ALJ: The—there—just pure accessibility at this point.

3

(*Id*.). The VE testified that the hypothetical individual would be capable of performing a range of unskilled work, such as small parts assembler at the light strength level. (Tr. 55, PAGEID #: 93).

The ALJ later asked the VE to address the hypothetical individual's need to be on task:

> ALJ: And could you please tell me what the tolerance for being off-task during the workday is for this hypothetical person?
>
> VE: Well, my experience is an upper level of around 8% of the workday, which is about five minutes per hour above and beyond the normal breaks of a morning—15-minute in the morning, 15-minute in the afternoon, and a 30-minute lunchtime.

(Tr. 58, PAGEID #: 96). In closing, Plaintiff's attorney argued, *inter alia*:

> I think that given his urinary—his kidney problems, and his urinary frequency I know that we discussed, or you discussed in a hypothetical, access to a restroom, but I think that that's inconsistent with being off-task about five minutes per hour if he's needing to use the restroom throughout the course of the workday. And it's taking him away from his work station. I would argue that that takes him off-task to a degree that would not be compatible with competitive work. And in the types of jobs that were identified may very well get him fired because those are, you know, production-type jobs that require a person to be at the work station.

(Tr. 60, PAGEID #: 98).

**B. Relevant Evidence**

Dr. Andrea Polesky examined Plaintiff at a refugee clinic in San Jose, California on April 11, 2013. (Tr. 245, PAGEID #: 283). She described Plaintiff's social history, in relevant part, as follows:

> The patient was born in Somalia. Her is married and has seven children, ages 6 to 16. He comes from the Daroud tribe. He was a nomad and his job was to raise camels. He has substantial exposure to unpasteurized camel milk. He has no education and is illiterate. He had to leave Somalia because Al Shabab was randomly killing men and so he left his family behind. He traveled to South Africa through Tanzania, Kenya, Zambia, and Zimbabwe, mostly in cars and trucks. In South Africa he was shot in the middle of a robbery. He has been incarcerated in the United States for a fight.

4

(*Id.*). Dr. Polesky found that Plaintiff, who was 41 years old on the date of his visit, suffered from, among other conditions, "urinary frequency and nocturia/urinary tract infection." (Tr. 246, PAGEID #: 284). Dr. Polesky indicated that Plaintiff "should continue to follow up with urology for further assessment of his bladder and urinary system to see if there is a reason why he has these symptoms and why he has had a urinary tract infection. I suspect his symptoms are somehow related to his surgery in S. Africa." (*Id.*).

Dr. Polesky completed a medical source statement the following month, in May 2013. (Tr. 207, PAGEID #: 245). Dr. Polesky found that Plaintiff can stand/walk less than 2 hours and can sit between 2 and 4 hours. (Tr. 208, PAGEID #: 246). Dr. Polesky also determined that Plaintiff should be restricted to lifting up to 10 pounds occasionally and can never climb, balance, stoop, kneel, crouch, or crawl. (Tr. 209, PAGEID #: 247). Dr. Polesky found that Plaintiff could reach above his shoulders frequently, but he is otherwise limited to reaching occasionally. (*Id.*). When asked to describe other limitations on Plaintiff's ability to work, Dr. Polesky noted that Plaintiff has urinary frequency, recurrent urinary tract infections, headaches, and poor sleep. (*Id.*).

Plaintiff was treated for complaints of burning with urination and abdominal pain at United Urgent Care in Columbus, Ohio on September 28, 2013 (Tr. 379, PAGEID #: 417). The treating physical noted Plaintiff's recurrent urinary tract infections, and urinalysis was consistent with an infection on that day. (*Id.*).

Nephrologist Dr. Tameem Kaka examined Plaintiff on July 9, 2014, describing him as "a pleasant 42-year-old male with a history of hypertension and recurrent urinary tract infections who present[ed] for [an] initial workup of an atrophic kidney." (Tr. 327–28, PAGEID #: 365–66). Dr. Kaka described Plaintiff's conditions as including "atrophy of kidney-chronic,"

5

"chronic kidney disease," and "recurrent urinary tract infection, urinary tract infection, site not specified-chronic." (Tr. 327, PAGEID #: 365). Plaintiff complained of intermittent painful or difficult urination, but did not have an infection that day. (Tr. 329, PAGEID #: 367).

Dr. Nur Badshah began treating Plaintiff beginning in February 2014, for chronic urine urgency, among other conditions. (Tr. 525, PAGEID #: 563). In a physical capacities evaluation completed in October 2014, Dr. Badshah opined that Plaintiff could stand no more than ten minutes at a time, walk no more than fifteen minutes at a time, and sit no more than five minutes at a time. (Tr. 315, PAGEID #: 353). Dr. Badshah indicated that Plaintiff should be prohibited from lifting, bending, squatting, crawling, and climbing. (Tr. 315–16, PAGEID #: 353–54). Although Dr. Badshah found Plaintiff capable of simple grasping and fine manipulation, he opined that Plaintiff cannot push or pull or use his feet for repetitive movements. (Tr. 315, PAGEID #: 353). Finally, Dr. Badshah found Plaintiff incapable of sustaining full-time work activity at any exertional level. (Tr. 316, PAGEID #: 354); *see also* (Doc. 318, PAGEID #: 356) (finding Plaintiff incapable of any physical work).

### C. The ALJ's Decision

In the August 12, 2015 decision, the ALJ found that Plaintiff suffers from the following severe impairments:

> degenerative changes of the lumbar spine with disc bulging and spinal stenosis at L4-S1 and right-sided disc herniation at L5-S1 compressing the right S1 nerve root. He has kidney disease with right kidney atrophy secondary to a remote gunshot wound, abdominal hernias, urinary tract infection, and mental health impairments of posstraumatic stress disorder, and depression.

(Tr. 17, PAGEID #: 55). The ALJ determined, however, that Plaintiff does not have an impairment or combination of impairments that met or equaled a listed impairment. (Tr. 18, PAGEID #: 56). The ALJ observed, however, that "[a]lthough [Plaintiff] has been identified

with urinary tract infection on several occasions, there is no explanation for his allegation of ongoing urinary frequency during times when no infection is present." (*Id*.). The ALJ also noted that Plaintiff "did not allege urinary frequency to a nephrologist, as would be expected were this symptom as persistent and frequent as [he] alleged elsewhere." (Tr. 23, PAGEID #: 61).

>The ALJ found that Plaintiff has the RFC to:

>perform light work as defined in 20 CFR 416.967(b) except he can frequently push, pull and reach with both upper extremities. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and or stairs. He can tolerate no more than frequent exposure to respiratory irritants such as dust, fumes, gases, and extremes of atmospheric conditions such as temperature or humidity. He should not climb ladders, ropes, or scaffolds. The claimant can perform simple, routine, repetitive tasks, requiring only occasional contact with supervisors and coworkers, and no contact with the general public. He can do work with only occasional changes in the work setting. He can perform jobs that provide him with access to a restroom throughout the entire day.

(Tr. 21, PAGEID #: 59). The ALJ noted Plaintiff's "chronic kidney disease and urinary tract infections" and his testimony that "he was obliged to urinate frequently, approximately 20 times in 24 hours." (Tr. 22, PAGEID #: 60).

The ALJ gave Dr. Polesky's opinion weight only "in so far as it supports the claimant's allegations of urinary frequency and sleep disturbance, kidney damage, and chronic low back and pelvic pain." (Tr. 23, PAGEID #: 61). The ALJ also looked to a number of records from clinic visits which contain no report of urinary urgency and frequency or bladder dysfunction, finding that they "suggest[ ] that [Plaintiff's] allegations of a chronic need to urinate every half-hour and 10 times during the night might be an exaggeration of his symptoms." (Tr. 26, PAGEID #: 64). The ALJ likewise found "[t]here is no objectively identified evidentiary support for the claimant's allegations of chronic urinary frequency, nor for the suggestions of the claimant's attorney that the claimant would be off task more than 5% of the time … despite the

7

claimant's relatively extensive medical contact." (Tr. 26–27, PAGEID #: 64–65). However, "[g]ranting the benefit of all reasonable doubt to the claimant's reported urinary frequency related to his history of right kidney gunshot wound and chronic urinary tract infections," the ALJ found that Plaintiff "can perform jobs that allow him access to a restroom throughout the entire workday." (Tr. 27, PAGEID #: 65).

The ALJ noted that Plaintiff was 42 years old and thus a younger individual on the date his application was filed, had no past relevant work, and is illiterate. (Tr. 28, PAGEID #: 66). Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in the national economy that Plaintiff can perform. (*Id*.). Thus, the ALJ determined that Plaintiff is not disabled as defined in the Social Security Act and denied Plaintiff's claim for supplemental security income. (Tr. 29, PAGEID #: 67).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.

*Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

### III. DISCUSSION

Plaintiff alleges two assignments of error. First, Plaintiff argues that the ALJ's decision should be reversed because the RFC is not supported by substantial evidence. (Doc. 12 at 5). More specifically, Plaintiff asserts that RFC's limitation that he have "access to a restroom throughout the entire day" is too vague because it does not address the frequency with which he needs to use the restroom. (*Id*. at 5–6). Second, Plaintiff claims that the ALJ failed to consider all of his medically determinable mental impairments. (*Id*. at 7).

#### A. The Sufficiency of the RFC (Issue 1)

In arguing that the RFC's restroom limitation is impermissibly vague, Plaintiff relies on *Sherrill v. Comm'r of Soc. Sec.*, No. 1:13-cv-276 (S.D. Ohio Apr. 2, 2014). In that case, the plaintiff likewise argued that the RFC's requirement that she work near a readily accessible bathroom was impermissibly vague and otherwise failed to properly accommodate her impairment of urinary incontinence. *Id*., Doc. 21 at 10–11. The Magistrate Judge agreed, stating:

> the ALJ's RFC formulation fails to adequately accommodate plaintiff's severe urinary incontinence impairment such that remand is required. The ALJ found that plaintiff's urinary incontinence limited her to work where there was "a readily accessible bathroom facility." (Tr. 23). This vague limitation fails to address a variety of factors that necessarily affect plaintiff's RFC. For example, the ALJ did not provide any explanation as to the frequency or duration of plaintiff's bathroom breaks. Plaintiff testified that at times she needs to change her incontinence briefs one to two times per hour. Yet, the ALJ failed to account for plaintiff's need to take such frequent breaks in formulating the RFC or to further develop plaintiff's testimony to determine the length of such a restroom break. The ALJ erred by failing to develop these pertinent facts at the hearing and craft an appropriately accommodating RFC.

9

*Id.* (citations omitted). The Magistrate Judge therefore recommended that the matter be reversed and remanded with instructions for the ALJ to determine the frequency and duration of the plaintiff's bathroom breaks and the practical work-day limitations that resulted in formulating the plaintiff's RFC. *Id.* at 11. The District Judge adopted the recommendation. *Id.*, Doc. 22.

According to Plaintiff, the ALJ in this case failed to address the same factors that led to remand in *Sherrill* and, consequently, the RFC's limitation that he "perform jobs that provide him with access to a restroom throughout the entire day" is impermissibly vague. (Doc. 12 at 6). In contrast, Defendant attempts to distinguish *Sherrill* on the ground that Plaintiff's impairment in this case is less severe. More specifically, Defendant explains that the plaintiff in *Sherrill* suffered from "chronic urinary incontinence" that required her "to change her adult diapers up to twice an hour," whereas the Plaintiff here "has recurrent, but intermittent, urinary tract infections." (Doc. 13 at 11–12). Defendant also cites to numerous records in which "Plaintiff repeatedly did not report problems with urinary frequency, except when he was experiencing an acute urinary tract infection," and states "the ALJ reasonably concluded that Plaintiff's claim that he needed to urinate frequently was not entirely believable…." (*Id.* at 12).

Defendant misses the point. The ALJ has already determined that Plaintiff's urinary tract infections constitute a severe impairment, which by definition significantly limits his physical ability to do basic work activities. (Tr. 17, PAGEID #: 55 (citing 20 C.F.R. 416.920(c)). However, the RFC fails to address the frequency and duration of Plaintiff's use of the restroom and merely requires him to have "access to [it] throughout the entire day." (*Id.*). It was this lack of specificity that caused the VE to question that limitation. (Tr. 54, PAGEID #: 92). Although the ALJ questioned the VE eventually concerning the need to be on task (Tr. 58, PAGEID #: 96),

10

the ALJ never put the two work limitations together to address the extent to which Plaintiff's use of the restroom would result in him being off task during the workday. (*Id*.). That was precisely why the RFC was defective in *Sherrill*.

As this Court has observed, "[t]he ALJ cannot have it both ways…." *Lutz v. Comm'r of Soc. Sec.*, No. 2:14-cv-725, 2015 WL 5343660, at *9 (S.D. Ohio Sept. 15, 2015). That is, the ALJ cannot find an impairment to be severe and then fail to include a "limitation associated with the impairment while fashioning an RFC." *Id*. Thus, even if the Court were to accept Defendant's argument that "the ALJ reasonably concluded that Plaintiff's urinary frequency was not a consistent problem" (Doc. 13 at 13), it still is a problem when Plaintiff suffers an infection. (*Id*. at 12) (noting Plaintiff reported urinary frequency when he was experiencing an acute urinary tract infection); *see also* Tr. 214, PAGEID #: 252 (finding urinary tract infection with complaints of q.30 minutes frequency and nocturia x10); Tr. 377, PAGEID #: 415 (noting symptoms of "pain and discomfort when urinating w/ urgency and frequency" and prescribing antibiotics); Tr. 69, PAGEID #: 107 (noting urinary frequency/nocturia/urinary tract infection); Tr. 212, PAGEID #: 250 (describing history of present illness as urinary frequency, urgency, nocturia, and urinary tract infections)).

In a footnote, Defendant speculates that Plaintiff's trips to the restroom would take no more than five minutes per hour above breaks and lunch. (Doc. 13 at 13, n.8). More specifically, Defendant claims that "about five minutes per hour" in addition to breaks and lunch would "*seemingly accommodate* more frequent but brief breaks in a readily-accessible restroom." (*Id*.) (emphasis added). However, it was for the ALJ, not the Commissioner, to determine the frequency of Plaintiff's restroom breaks and their impact on his ability to work. *Sherrill*, No. 1:13-cv-276 (S.D. Ohio Apr. 2, 2014) (citing *Hubbard v. Comm'r of Soc. Sec.*, No.

11

11-11140, 2012 WL 883612, at *7 (E.D. Mich. Feb. 27, 2012) (Report and Recommendation), *adopted*, 2012 WL 858636 (E.D. Mich. Mar. 14, 2012) (reversing and remanding with directions to the ALJ to determine the frequency of plaintiff's unscheduled bathroom breaks and their effect on plaintiff's ability to work); *Green v. Astrue*, No. 3:09-cv-33l, 2010 WL 2901765, at *5-6 (E.D. Tenn. July 2, 2010) (Report and Recommendation), *adopted*, 2010 WL 2901762 (E.D. Tenn. July 20, 2010) ("[T]he ALJ's failure to specify precisely how [p]laintiff's need for frequent restroom breaks impacted her ability to work was an error that requires remanding this case."). Because the ALJ failed to do so, this case must be remanded.

### B. Remaining Assignment of Error (Issue 2)

The Court's recommendation to reverse and remand on Plaintiff's first assignment of error alleviates the need for analysis of Plaintiff's remaining assignment of error. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignment of error if appropriate.

### IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** the case under sentence four of 42 U.S.C. § 405(g) for a determination of the frequency and duration of Plaintiff's restroom breaks and resulting limitations, if any.

### V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations

to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: January 4, 2018                               /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE